UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.   ) | Criminal Case No: **1:21-CR-00215** |
| ) | |
| **JOHN STEVEN ANDERSON**   ) | |
| ) | |
| Defendant.   ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S ORAL MOTION TO REMOVE DESIGNATION OF "HIGHLY SENSITIVE" FROM CCTV VIDEO CLIP

Pursuant to the Protective Order guiding discovery in this matter, on May 28, 2021, the defendant moved via oral motion to remove the designation of "Highly Sensitive" on a limited portion of a CCTV video obtained from the government through discovery. The video snippet at issue depicts the exterior of the lower west terrace door, with the camera looking outward towards the crowd, and shows a male in the crowd spraying a yellow-orange chemical substance into the crowd in front of the Capitol and directly at the defendant, who then proceeds to cough in reaction to the substance. This exculpatory video is of paramount importance to the defense as it contradicts the government's case and establishes Mr. Anderson's defense to the serious felony accusations which the government has indicted, while providing a visual explanation for why John Anderson made his way to the very front of the crowd to seek medical assistance from the officers just minutes after being sprayed with the chemical substance, which is depicted in body camera videos that are not designated with any sensitivity.

## VIDEO WITH HIGHLY SENSITIVE DESIGNATION

At 2:53 PM on January 6, 2021, Capitol CCTV captured John Anderson as wearing a black beanie and almost out of view in the bottom right corner of a security video depicting an outdoor tunnel area of the lower west terrace door to the Capitol. The video also depicts a man standing a few feet behind and to the left of Mr. Anderson. The unknown man is recorded emptying an entire can of yellow-orange chemical substance into the tunnel area where Mr. Anderson was standing, with a large portion of that spray directly aimed at Mr. Anderson's exact position. Seconds later, Mr. Anderson can be seen coughing. The recording sought for release from this incident is approximately 30 seconds in duration. This short clip is the only video that the defense is seeking to remove from the "Highly Sensitive" designation, at this time.

 

*Still images from the CCTV clip. Mr. Anderson's head is visible is on the bottom right of the image, he is wearing a black beanie hat.*



*Still image from the CCTV clip showing chemical spray being directed at Mr. Anderson's face, who is standing a few people ahead of the man spraying. Mr. Anderson's head is visible is in the bottom right corner of the image, he is wearing a black beanie hat and standing near the wall on the right.*

Moments after being sprayed, Mr. Anderson can be seen on video coughing repeatedly.

The basis for the strict designation, according to the government, is simply the origin of the video — the video was derived from a Capitol security camera.

## CONTEXT THROUGH VIDEO WITHOUT DESIGNATION

At 2:54 PM, just one minute after he was sprayed, Mr. Anderson is depicted in his red jacket on an officer's body-worn camera, which the government has not designated with any sensitivity, leaning on a wall in this tunnel and struggling to breathe.



*Still image from an officer's body-worn camera depicting Mr. Anderson on the right, wearing a red jacket, leaning on a tunnel wall.*

Mr. Anderson remains in the tunnel as officers continuously deploy additional OC gas into the tunnel.



*Body camera footage of an officer, on the right, deploying OC gas into the tunnel at the crowd in front of the Capitol.*

Within 7 minutes from the moment that Mr. Anderson is originally sprayed as depicted in the Highly Sensitive video, and after visual struggle to stand up, Mr. Anderson collapses to the floor in that tunnel, still conscious.



*Video still of Mr. Anderson collapsed on the ground and against the wall of the tunnel.*

As the OC continues flowing into the crowd, Mr. Anderson covers his face with his black beanie and finds the strength to approach the officers to seek help.

 

*Video depiction of OC spray being sprayed into the crowd and Mr. Anderson, on the right, rising up from the ground, covering his face with his hat, making his way to the officers.*

Seconds later, Mr. Anderson finds his way to the open window that separates the officers from the crowd and leans into it, unable to open his eyes, and with his face tensing in pain. Mr. Anderson repeatedly cries out, "I can't breathe! I can't breathe!" — over and over.



After about 30 seconds of him repeatedly stating that he can't breathe, the officers finally act on the indisputable reality that Mr. Anderson is in need of immediate medical attention pull him in to help him.



Most notably, Mr. Anderson's face and hands are seen covered in the yellow-orange substance when he is in clear view of an officer's body camera, the same substance that was sprayed on him minutes prior, as depicted in the video the government has deemed Highly Sensitive.





Mr. Anderson is then escorted into the Capitol building by Capitol Police officers for medical treatment.



*Still image of Mr. Anderson being assisted into the Capitol by Capitol Police from other security footage, designated as Highly Sensitive.*

## THE GOVERNMENT'S INEXPLICABLE POSITION

While John Anderson is charged with assaulting and impeding police officers, and theft of government property, amongst other accusations, the government's evidence fails to corroborate the charges. The government's evidence, instead, shows a man approaching police to seek medcial attention after being chemically prayed by a member of the crowd and after being subjected to additional chemical spray released into the crowd by law enforcement. The video sought for release, and being blocked by the government, establishes Mr. Anderson's defense.

Pursuant to the Protective Order entered in this matter, the government bears the burden of demonstrating the need for the designation of the disputed 30 seconds of footage. "When the Government is seeking a protective order, it bears the burden of showing that good cause exists for its issuance. Good cause requires a 'particularized, specific showing.'" [Internal citation omitted.] *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019). "In determining whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order; and

(3) the public's interest in disclosure outweighs the possible harm." *Id*. The government has not met its burden by the sheer reliance on the fact that the government wishes to keep their *videos* away from public view.

Interestingly, the government does not object to either party using video stills, or screenshots, in communications about this case that are open to the public. The government only seeks to protect *moving images* or *videos* from the public. The distinction between screenshots and moving video is inexplicable and not a sufficient basis for a Protective Order on evidence that directly establishes Mr. Anderson's defense to the very serious felony accusations the government has levied.

The government's desire to protect the positions of their cameras, as previously argued by the government, is inconsistent with permitting the release of the still images from the security cameras. The video at issue, after all, is but a collection of such stills, set in motion. There is no added security benefit to the government to keep the relevant videos in secrecy. For the defense, however, there is a meaningful distinction.

Mr. Anderson has a variety of preexisting medical conditions and has been treated by doctors for years leading up to this medical incident at the Capitol. Mr. Anderson's allergies, asthma, heart condition, and hearing loss all bear on his interaction with the officers after being spayed. Defense counsel will need to review the video of Mr. Anderson being sprayed in the crowd and then coughing, in conjunction with the body camera videos that follow, with Mr. Anderson's medical providers to determine the particularities of the biological effect the chemical spray had on him and how his preexisting medical conditions played a role in his reaction. Screenshots cannot adequately convey his coughing and the length and intensity of the

chemical spray for his respiratory doctors, nor the stressful chaos of that environment for his cardiologist, nor the loud tumult of the crowd for Mr. Anderson's audiologist.

The defense should be free to accomplish such tasks without having to scare doctors with a long and tortuous Protective Order that likely will cause the professionals to cease communications with counsel in fear of legal repercussions in the event of misunderstanding of the complex pleading. Forcing Mr. Anderson's existing medical providers to agree to a Protective Order is an undue burden on the defense and constitutionally suspect limitation on a defendant's right to a complete defense.

Furthermore, the defense should be free to utilize this highly exculpatory short video to defend Mr. Anderson just as the government uses their discretion to publicize videos and screenshots to accuse this defendant, and every other, of very serious crimes. And, Mr. Anderson should be free to utilize CCTV video publicly just as the government has utilized CCTV video publicly to benefit their position in other prosecutions. See discussion *infra*. The defense should not need to explain how or why we need this evidence when the exculpatory nature of the evidence is clear on its face. The subjection of this 30-second CCTV clip to a Protective Order prejudices the defendant immensely. The government's position on preventing the release of a 30-second recording is unreasonable and fails to meet the burden that is on the government to prevent release.

## THE GOVERNMENT'S USE OF CCTV VIDEO IN OTHER CAPITOL CASES

The government has made Capitol CCTV video public when it bolsters or conveniences their case. The government has already utilized CCTV video in their prosecution of Julian Khater

and George Tanios, two January 6 Capitol incident defendants, and has made the CCTV footage available to the public.[1] There may be additional instances of public CCTV footage in other Capitol cases, though the government is in the primary position to answer to the court in which other cases such videos have been utilized.

Surely, Mr. Anderson should not be prejudiced by the continued veil of secrecy over the video sought for release in his case simply because *in this case* the government does not feel the release is advantageous to their legal position. The government's contradictory position in John Anderson's case to their utilization of CCTV video in the cases of Julian Khater and George Tanios gives the *government control over the defense* and creates a disparity between the parties standing before this court, rendering the defense an inferior party to the prosecution; all the while, the two parties are to stand before the court as equals.

The defendant has a Sixth Amendment right to a public trial. The American people have a right under the First Amendment to access public cases. See *Presley v. Georgia*, 130 S.Ct. 721, 724 (2010). And, the D.C. Circuit recognizes a "strong presumption in favor of public access to judicial proceedings." *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980). The D.C. Circuit's predominant position is consistent with the Supreme Court's decision in *Gannett Co. v. DePasquale*. See 443 U. S. 368, 380 (1979) ("The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly

---

[1] New Videos Show Alleged Assault On Officer Brian Sicknick During Capitol Riot | NPR (2021). Retrieved 3 June 2021, from https://www.npr.org/2021/04/28/991654947/new-videos-show-alleged-assault-on-officer-brian-sicknick-during-capitol-riot

dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.")

Public view and scrutiny of Mr. Anderson's case, and the government's conduct exposed at the same, is the standard American openness and transparency to which the American People and the defendant are entitled. The government answers to the People in the performance of their duties, not the other way around. See *Waller v. Georgia*, 467 U.S. 39, 45 (1984) ("In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury"). The government's position is contradictory to Supreme Court precedent on this issue. See *In re Oliver*, 333 U.S. 257, 270 (1948) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power").

And, the government's position in the Anderson case is contradictory to their utilization of CCTV video in the Khater and Tanios cases, rendering their argument entirely ineffective.

In Mr. Anderson's case, the government is attempting to conceal video favorable to the defense to protect their unjust prosecution and to continue to unilaterally control the public narrative. Why should this be permitted?

**CONCLUSION**

The defense is not seeking to publicize the entirety of the government's CCTV recordings. Instead, the defense selected a 30-second clip from CCTV of the incidents relevant only to Mr. Anderson's defense, beginning with the spraying and ending with his coughing. The defense request to remove the Highly Sensitive designation is reasonable and measured.

The defense is submitting the 30-second video to chambers for in-camera review, as ordered by this court.

Respectfully submitted,
By Counsel:

/s/
_____

Marina Medvin, Esq.
*Counsel for John Anderson*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

### CERTIFICATE OF SERVICE FOR CM/ECF

I hereby certify that on June 3, 2021, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/
_____

Marina Medvin, Esq.