## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-215-RC** |
| | : | |
| **JOHN STEVEN ANDERSON** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' OPPOSITION TO THE PRESS COALITION'S MOTION TO INTERVENE

The United States of America hereby opposes the Press Coalition's Motion to Intervene (DE 27) insofar as it (1) challenges the government's designation of a clip of U.S. Capitol security video as "Highly Sensitive" pursuant to the parties' Protective Order Governing Discovery issued on April 26, 2021 (DE 20), and (2) asks the Court to require the government to provide that video to the press and the public. The government has never submitted the video at issue to the Court, and the video has never been the subject of any judicial decision, and thus it is not a "judicial record" to which any public right of access might attach. And insofar as the Press Coalition seeks to challenge the government's designation of the video as "Highly Sensitive" so that defense counsel may provide a copy of the video to the media or otherwise publicize it, the Press Coalition's arguments both fail to appreciate the meaningful differences between still images and videos and, taken to their logical conclusion, would allow the public dissemination of many hours of video from security cameras inside the U.S. Capitol, thus creating the very dangers to the Capitol's security that the "Highly Sensitive" designation seeks to prevent. The Press Coalition's Motion to Intervene should thus be denied on the merits.

I.      **Background**

The relevant background to the Press Coalition's Motion to Intervene is as follows. On February 17, 2021, the Honorable G. Michael Harvey issued a warrant for defendant John Steven Anderson's arrest for various crimes that Anderson committed during the January 6, 2021, attack on the U.S. Capitol (DE 1). Law enforcement officers arrested Anderson on February 25 (DE 9), and, on March 4, 2021, Anderson had his initial appearance in this District and was released on conditions (DE 10).

On April 26, 2021, at the government's request and with Anderson's consent (DE 18), the Court entered a protective order governing discovery in this case (DE 20). The protective order allows the government to designate certain materials provided in discovery as "Sensitive" or "Highly Sensitive," and expressly recognizes that "[s]urveillance camera footage from the U.S. Capitol Police's extensive system of cameras on U.S. Capitol grounds" is among the "[e]xamples of materials that the United States may [so] designate" (DE 20 at 1). Among other things, the protective order prevents the dissemination of materials designated as Sensitive or Highly Sensitive "to any persons other than Defendant, the legal defense team, or the person to whom the Sensitive or Highly Sensitive information solely and directly pertains or his/her counsel, without agreement of the United States or prior authorization from the Court" (*id.* at 2).

After the Court entered the protective order, the government provided to Anderson footage from the U.S. Capitol Police's closed-circuit video system that it designated as Highly Sensitive. On June 3, 2021, Anderson moved the Court to remove the Highly Sensitive designation from a 30-second clip of that footage (DE 24 at 2), which the government opposed (DE 25). With his motion, Anderson submitted the video clip to the Court for in camera review (DE 24 at 12). A hearing on Anderson's motion is tentatively scheduled for July 28.

On June 21, the Press Coalition filed the instant Motion to Intervene "for the limited purpose of challenging the Government's designation of a 30-second clip of surveillance video from the United States Capitol as 'Highly Sensitive'" (DE 27 at 2). The Press Coalition asks the Court to "order the Government to remove the challenged designation and to make the video clip available to the press and the public" (*id.*).

## II.     Argument

The government does not contest the Press Coalition's ability to intervene in this case for the purpose of challenging the government's designation of surveillance video as Highly Sensitive under the parties' protective order. The Court should, however, deny the Press Coalition's Motion to Intervene on the merits. There is no legal basis for the Press Coalition's request that the Court require the government to make "available to the press and the public" criminal discovery that the government has never filed with or submitted to the Court, that has never been the subject of a judicial decision, and that has only been submitted to the Court as part of a defense motion to remove the video's Highly Sensitive designation. And the government's designation of the video as Highly Sensitive under the protective order was entirely appropriate.

### A.     Limited Intervention Appears Appropriate Here

It is unclear whether the Press Coalition may intervene in this case to challenge the government's designation of the 30-second video clip at issue as Highly Sensitive under the parties' protective order. As the Second Circuit has explained, although "[t]he Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case[,] . . . such motions are common . . . to assert the public's First Amendment right of access to criminal proceedings." *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (citing cases). That court thus held "that a motion to intervene to assert the public's First Amendment right of access to criminal

proceedings is proper." *Id.* But, as discussed below, the video at issue is not a judicial record, and thus the public has no right of access to that video: "the media's right of access does not extend to information gathered through discovery that is not part of the public record[.]" *Grove Fresh Distribs. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir. 1994); *see also, e.g.*, *United States v. Bundy*, No.: 2:16-cr-046-GMN-PAL, 2016 U.S. Dist. LEXIS 166626, at *9 (D. Nev. Nov. 30, 2016) ("[T]he U.S. Supreme Court has long held that there is no common law or First Amendment public right of access to *discovery* information, let alone any presumption of a right to access. . . . The qualified First Amendment right of access to judicial proceeding and documents simply does not extend to discovery materials."); *In re Special Proceedings*, 291 F. Supp. 2d 44, 48 (D.R.I. 2003) ("the media have a presumptive common-law right of access to judicial records but not to potential evidence possessed by the parties") (citing cases).

Although the press has no right of access to discovery exchanged between the parties, the Seventh Circuit in *Grove Fresh* nonetheless held in the civil context that "the press does have standing to challenge a protective order for abuse or impropriety." 24 F.3d at 898. And, in civil cases, courts regularly allow non-parties to intervene to challenge the propriety of the designation of discovery materials as protected pursuant to a protective order. *See, e.g.*, *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1351 (9th Cir. 2013); *Shingara v. Skiles*, 420 F.3d 301, 303 (3d Cir. 2005); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 354-55 (11th Cir. 1987). Thus, although the Press Coalition does not cite, and the government has not found, a case directly on point holding that the media may intervene in a criminal case for purposes of challenging the designation of discovery materials pursuant to a protective order, the government assumes for purposes of this motion that intervention under such circumstances is appropriate. *See, e.g.*, *United*

*States v. Loughner*, 807 F. Supp. 2d 828, 831-32 (D. Ariz. 2011) (assuming the media had a right to intervene despite the fact that caselaw appeared "to support a limited right [to intervene] that only attaches when court proceedings, and materials that are either filed or lodged with the court, are at issue").

## B.    The Press Coalition May Not Seek Disclosure of the Video

There is no legal basis for the Press Coalition's request that the Court "order the Government . . . to make the video clip available to the press and the public" (Motion to Intervene at 2). The government has never filed the 30-second video clip at issue in the Press Coalition's motion with the Court and that video has never influenced a judicial decision, and thus it is not a "judicial record" to which any right of public access might attach.

As the D.C. Circuit recently explained, although "third parties may intervene in cases for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order[,]" they "may seek disclosure only of 'public records,' which, in the context of court proceedings, are called 'judicial records.'" *League of Women Voters of the U.S. v. Newby*, 963 F.3d 130, 132 (D.C. Cir. 2020). But materials provided in discovery are not judicial records. *See, e.g.*, *SEC v. American Int'l Group*, 712 F.3d 1, 4 (D.C. Cir. 2013) ("though filing a document with the court is not sufficient to render the document a judicial record, it is very much a prerequisite"); *United States v. Kravetz*, 706 F.3d 47, 55 (1st Cir. 2013) ("[T]he courts of appeals have uniformly held that the public has no common law or constitutional right of access to materials that are gained through civil discovery but neither introduced as evidence at trial nor submitted to the court as documentation in support of motions or trial papers."). As the Eleventh Circuit has explained, "documents collected during discovery are not 'judicial records.' Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume

5

that the sole purpose of discovery is to assist trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986).

The fact that Anderson submitted the video clip to the Court as part of his motion to remove its Highly Sensitive designation does not somehow transform that video onto a judicial record. The D.C. Circuit has repeatedly held that "not all documents filed with courts are judicial records." *American Int'l Group*, 712 F.3d at 3; *see also Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. 2020) (same). Instead, "what makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process." *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997). To be a judicial record, the item must, at a minimum, be "intended to influence" a court decision. *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017). The concept of judicial records "assumes a judicial decision. If none occurs, documents are just documents; with nothing judicial to record, there are no judicial records." *El-Sayegh*, 131 F.3d at 162.

Here, the video clip has not influenced any judicial decision, and thus is not a judicial record to which the common-law right of access would apply. *See American Int'l Group*, 712 F.3d at 3-4 ("The IC reports are not judicial records subject to the right of access because the district court made no decisions about them or that otherwise relied on them."). This will remain true even after the Court rules on Anderson's motion to remove the Highly Sensitive designation from the video: for obvious reasons, adjudication regarding a document's public disclosure is insufficient to transform that document into a judicial record. *See El-Sayegh*, 131 F.3d at 163 (holding that document was not a judicial record where it "played no role in any adjudicatory function—save, of course, those functions relating to its very disclosure"). Thus, because the Press Coalition has

no right of access to the video clip at issue, there is no legal basis for its request that the Court order the government to provide the press and the public with access to that video.

### C.    The Highly Sensitive Designation Is Appropriate

The Court should also deny the Press Coalition's Motion to Intervene insofar as it seeks to require the government to remove the Highly Sensitive designation from the video clip.

When a party (or, as here, a non-party intervenor) challenges another party's designation of a document or other item produced in discovery as protected pursuant to an existing protective order, the party seeking to keep the document protected bears the burden of establishing "good cause" to do so. *See, e.g.*, *Blum*, 712 F.3d at 1355; *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994); *United States v. Concord Mgmt. & Consulting LLC*, 404 F. Supp. 3d 67, 74 (D.D.C. 2019). To establish "good cause," the party must "show[ ] that specific prejudice or harm" will result from removing the challenged item's protected designation. *Blum*, 712 F.3d at 1355 (quotation marks omitted). "It is well established that protective orders are appropriate where the disclosure of discovery could jeopardize the national security of the United States, compromise an ongoing investigation, or infringe on the privacy of uncharged third parties and others associated with a case." *Concord Mgmt.*, 404 F. Supp. 3d at 75 (citing cases). Indeed, many courts "have granted protective orders regarding unclassified, but sensitive material vital to national security." *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002) (quotation marks omitted).

Here, there appears to be no dispute that the government may properly designate footage from the U.S. Capitol Police's closed-circuit video system as Highly Sensitive under the protective order. Indeed, the protective order itself expressly contemplates that result (DE 20 at 1). As the government explained in its opposition to Anderson's motion to remove the Highly Sensitive

7

designation from the 30-second video clip at issue, access to the Capitol's closed-circuit video system is strictly limited (DE 25 at 1-2; *see also* Declaration of Thomas A. DiBiase, General Counsel for the United States Capitol Police (Attachment A to DE 25)). And, more specifically, the Capitol Police are aware of efforts made by individuals, whether participants in the Capitol Attack or not, to gather information about the interior of the U.S. Capitol that is generally not publicly available (DE 25 at 2). The Capitol Police are concerned "that providing unfettered access to hours of extremely sensitive information to defendants who have already shown a desire to interfere with the democratic process will result in the layout, vulnerabilities, and security weaknesses of the U.S. Capitol being collected, exposed and passed on to those who might wish to attack Capitol again" (DiBiase Decl. ¶ 14). *See generally Dhiab v. Trump*, 852 F.3d 1087, 1096-97 (D.C. Cir. 2017) ("The government's expert judgment was that militants could study the recordings repeatedly and slowly, looking for 'patterns' of 'mistakes' not identifiable from firsthand experience or written descriptions. Even if the recordings contained no new information, the government thus demonstrated good cause for sealing them.") (citation omitted). The government has thus consistently designated footage from the Capitol Police's closed-circuit video system as Highly Sensitive when producing it in discovery in cases involving the January 6, 2021, Capitol Attack. As another judge in this District has recently concluded, "maintaining the confidentiality of [the Capitol Police's] footage is vital to protecting the Capitol—especially as to those who have sought to attack it." *United States v. McCaughey*, No. 1:21-cr-40 (TNM), 2021 WL 1564463, at *4 (D.D.C. April 21, 2021).

Notwithstanding the foregoing, the Press Coalition argues that "[t]he Government cannot demonstrate a legitimate need to designate this 30-second video clip as 'Highly Sensitive,' because still images from this specific surveillance video are already in public view in the parties' filings

in this case, and videos from Capitol surveillance cameras more generally have been made public by the Department of Justice, Congress, and the press" (Motion to Intervene at 1). Were the Court to accept this argument, it would have sweeping ramifications for the Capitol Police's ability to protect the U.S. Capitol.

As an initial matter, there are significant differences between the information that can be gleaned from a still image and the information that can be learned from video. For example, still images do not show whether the camera at issue is moving or static. *Cf. Lee v. Andersen*, 616 F.3d 803, 808 (8th Cir. 2010) ("The camera rotated 360 degrees in a time period of 118 seconds, focusing on certain doors and windows before panning out for a wider view of the surrounding area."). Even if a camera does not move automatically, still images do not show whether its movement can be controlled remotely. *Cf. InTouch Techs., Inc. v. VGo Communs., Inc.*, 751 F.3d 1327, 1333 (1st Cir. 2014) ("The technology relates to controlling the movement of a remote video camera in real time directly responsive to movement of a remote mouse pointer."). And even for a static camera, still images do not reveal whether the camera has zoom capabilities. Additionally, still images do not show the number of frames per second at which the video is recorded, and thus the level of detail it may capture. *Cf. Ochoa v. Beard*, No. CV 15-0443-FMO (KES), 2016 U.S. Dist. LEXIS 95384, at *26 (C.D. Cal. June 16, 2016) ("Pinchak *did* call White to testify that the video from the relevant surveillance camera recorded only 6 frames per second rather than the standard 24 or 30 frames. Indeed, Pinchak used this fact in his closing statement to explain why there was no muzzle flash from Alfredo's supposed gun."). Therefore, although a handful of still images from video footage have been included in public filings in this case, those images do not convey the full range and depth of information that the U.S. Capitol's closed-circuit video system potentially may capture. Were videos form that system made public, those intent on attacking the

9

Capitol "could study the recordings repeatedly and slowly, looking for 'patterns' of 'mistakes' not identifiable from" still images; thus, "[e]ven if the recordings contained no new information," there is "good cause for sealing them." *Dhiab*, 852 F.3d at 1096-97.

Moreover, although the Press Coalition's current motion seeks only a single, 30-second video clip, the Coalition's arguments for removing the Highly Sensitive designation from that clip, taken to their logical conclusion, would require the government to de-designate many hours of security footage from video cameras throughout the U.S. Capitol. The Press Coalition claims that the government lacks good cause to designate the video clip at issue as Highly Sensitive because (1) "the Government included still images pulled from the Video Clip in its public filings in this case"—specifically, in its affidavit in support of the warrant for Anderson's arrest (Motion to Intervene at 6), and (2) "the public already has access to an enormous volume of videos from inside the Capitol" (*id.* at 7). But the government routinely uses still images taken from videos in seeking arrest warrants, both to establish the defendant's identity and to establish probable cause that the defendant committed various crimes. And the Capitol Police had no control over the fact that Capitol surveillance video was used "in President Trump's second Impeachment Trial" (*id.* at 6). Thus, if these two factors taken together are sufficient to prevent the government from designating security footage from inside the U.S. Capitol as Highly Sensitive under the protective order, the government would not be able to protect many hours of security footage from which it has used still images in its public filings, thus creating the very security concerns the protective order is meant to protect. *See McCaughey*, 2021 WL 1564463, at *4 ("[M]aintaining the confidentiality of [the Capitol Police's] footage is vital to protecting the Capitol—especially as to those who have sought to attack it.").

Requiring the government to remove its Highly Sensitive designation from the particular 30-second video clip at issue here "may seem innocuous when viewed in isolation," but nonetheless poses serious security concerns under a "mosaic theory." *Kasza v. Whitman*, 325 F.3d 1178, 1181 (9th Cir. 2003). Under that theory, "separate disclosures of otherwise innocuous information could be assembled by a requester or other person to reveal 'how, when, [and] under which circumstances[] certain techniques are employed' by law enforcement and investigative agencies. . . . Thus, the only way to prevent anyone from constructing the broader 'mosaic' is to shield each individual piece from disclosure." *Whittaker v. DOJ*, No. 18-cv-01434 (APM), 2020 WL 6075681, at *5 (D.D.C. Oct. 15, 2020). This theory "finds support in both Supreme Court and D.C. Circuit precedent" and "[a]s a result, in cases implicating national security, courts have permitted the government to rely on [a mosaic approach] to justify withholding agency records that form only a small piece of the larger puzzle." *Shapiro v. DOJ*, 239 F. Supp. 3d 100, 115 (D.D.C. 2017). The Capitol Police have invoked the "mosaic theory" in seeking to protect the video footage from their closed-circuit video system, noting the security concerns implicated by the aggregation of information (DiBiase Decl. ¶ 16 & n.6). For instance, "even if some information about the U.S. Capitol's layout is available online, [the Capitol Police's video] footage provides far more detailed information, including, for example, the precise location of the vast network of cameras." *McCaughey*, 2021 WL 1564463, at *4. The government thus has good cause to designate the 30-second video clip at issue in the Press Coalition's Motion to Intervene as Highly Sensitive under the parties' protective order, notwithstanding the fact that a few still images from that video and select video from other cameras inside the Capitol are publicly available.

WHEREFORE, the Government asks that the Press Coalition's Motion to Intervene be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793


By:     /s/ *Robert Juman*
Robert Juman
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office, Detailee
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (786) 514-9990
E-mail: Robert.juman@usdoj.gov


<u>CERTIFICATE OF SERVICE</u>

On this 6th day of July, 2021, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System and e-mailed to counsel of record for intervening party.

/s/*Robert Juman*
Robert Juman
Assistant United States Attorney