UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>v. ) Criminal Case No: **1:21-CR-00215**<br>)<br>**JOHN STEVEN ANDERSON**, )<br>)<br>Defendant. ) | |

# DEFENDANT'S MEMORANDUM IN *SUPPORT* OF THE PRESS COALITION'S MOTION TO INTERVENE

The Press Coalition has moved to intervene in this matter, supporting the defendant's request to change the "Highly Sensitive" designation on the limited 30-second CCTV video depicting Mr. Anderson being gassed by a member of the public and coughing, requesting media access to this limited piece of evidence.

The United States government has opposed the media's First Amendment request to intervene in Mr. Anderson's case in order to view the video in question. The government has also opposed the defendant's motion to change the designation of the 30-second CCTV footage. The

The defense opposes the government's arguments and supports the Press Coalition's motion to intervene in this matter.

## BACKGROUND

Mr. Anderson was initially charged on January 6, 2021 by Capitol Police after officers helped Mr. Anderson enter the Capitol building to render emergency medical aid to him. Mr.

Anderson was cited for "unlawful entry," presumably under § 22–3302 of the Code of the District of Columbia, a local misdemeanor offense with a maximum penalty of six months incarceration, and released on a citation, scheduled to appear in the Superior Court of the District of Columbia.

On February 17, 2021, the United States government filed federal charges against Mr. Anderson, now alleging felonious conduct that included "assaulting, resisting, or impeding certain officers and aiding and abetting," and "civil disorder and aiding and abetting," in addition to the typical four misdemeanor charges the United States has levied against all of the January 6 Capitol incident defendants. Undersigned counsel was surprised by the new allegations, confused as to how property can be stolen when Mr. Anderson was in law enforcement custody and released without such allegations, and how he could have assaulted officers if he was receiving aid from them and could barely breathe or walk without their assistance, again, being released by Capitol Police officers on a citation without such extreme conduct ever being mentioned. Federal prosecutors nonetheless assured Mr. Anderson's counsel that video evidence would reveal the felonious conduct. Federal prosecutors also assured defense counsel that video evidence will show Mr. Anderson making his way to the front of the police line where he had to be chemically sprayed by Capitol Police after being disorderly, and that he required medical aid only after this negative interaction with law enforcement.

When the video evidence was finally released to the defense, undersigned counsel was disturbed, to put it mildly, to see no corroboration of either the government's indictment nor their separate factual allegations; instead, undersigned counsel watched CCTV video and police body camera footage of Mr. Anderson standing peacefully in a tunnel with his phone out (presumably

recording the events), being randomly gassed by a member of the crowd, finding himself in medical agony, seeking medical assistance from Capitol officers, repeatedly crying out "I can't breathe, I can't breath," and receiving aid from Capitol Police. The video evidence does not show any assault or impediment of officers, it does not show Mr. Anderson engaging in civil disorder, it does not show aiding and abetting, it does not show Mr. Anderson acting unruly and being gassed by police as a result, and the videos do not show theft of government property. Moreover, the video evidence clearly shows Mr. Anderson being taken by officers inside of the Capitol, not entering the Capitol building on his own. What the government's video evidence shows is that the charges against Mr. Anderson are factually unsupported, prejudicially delusional at best.

In attempting to alleviate the psychological and emotional burden of a trial on an ill and elderly defendant, undersigned counsel began working on presenting a complete defense explanation for government counsel in hopes of resolving this case outside of court. Defense counsel planned to show that Mr. Anderson, an elderly man with a myriad of preexisting medical conditions, was medically predisposed to having a dangerous adverse reaction to the various chemical gasses that were sprayed directly on him by a member of the crowd and into the air of the tunnel by the officers attempting to control the crowd, and Mr. Anderson did nothing more than seek medical aid when he approached the officers, which is entirely corroborated by the videos the government provided in discovery. Undersigned counsel outlined this position to counsel for the government and advised that the defense will even provide medical documentation to help the government understand their misinterpretation of the facts and error in bringing the serious charges. This is what led to defense counsel's oral request on June 3, 2021 to

change the designation of the 30-second CCTV video depicting the moment when Mr. Anderson is first sprayed with a chemical substance by a member of the crowd.

The government opposed defendant's request to release the video from "Highly Sensitive" designation, inaccurately claiming that the defense had a burden that was not met, and proposing ways for defense counsel to designate Mr. Anderson's doctors and medical providers as part of the defense team, seeking to subject them to the government's protective order. The dispute over this video in public pleadings between counsel appears to have piqued the curiosity of the media, resulting in the Press Coalition's motion.

**ARGUMENT**

I. <u>The Press Coalition's Motion is Limited in Scope and Non-Prejudicial</u>

The Press Coalition's motion supports the defense position and asks for release of the same video sought for removal from "Highly Sensitive" designation by the defense. The Press Coalition's motion asks for the release of a singular piece of evidence, one that is referenced in court pleadings and which is specifically being litigated by the parties, one that is currently being reviewed *in camera* by the court; nothing additional. Contrary to the government's assertions, the Press Coalition is not seeking a right to broadly review discovery in this case. The limited intervention and limited scope of the request renders the Press Coalition's motion particularized and reasonable. And, unlike typical motions to intervene, which serve the independent interests of a third party, this motion to intervene and the particular piece of evidence requested by the press is not being sought *independent of* the parties' interests — it is instead being sought in support of one of the party's interests. The motion, therefore, is non-prejudicial. The Press

Coalition's motion is also supported by the First Amendment and by the public transparency arguments that the defense has raised in Document 24.

The defense has fully briefed the arguments and legal standard in favor of releasing the 30-second CCTV video from "Highly Sensitive" designation, and incorporates the arguments from Document 24 and Document 26 herein.

II. The Government's Opposition Reveals Holes In Their Arguments for Protection

The government uses their brief in opposition to the Press Coalition's motion as another opportunity to expand on their argument against the release of the CCTV footage. What's most interesting, however, is what the government chooses *not to* discuss.

The defendant's memoranda on this topic, and the brief filed by the Press Coalition, point to cases and instances where the government has voluntarily released CCTV footage in order to bolster their case against certain defendants. The government does not comment on these cases in any of their briefs. Instead, the government regurgitates and expands on a "mosaic theory" to protect various pieces of CCTV footage. This theory claims that release of pieces of CCTV footage might result in a bad actor piecing together a map of the Capitol previously unknown to the public.

Aside from the obvious, that hundreds, maybe even thousands, of hours of video footage from inside and outside of the Capitol are all over social media and mainstream media, the "mosaic theory" is also entirely contradicted by the government's own actions — by the government's strategic decisions to release portions of CCTV footage when advantageous to

their prosecution. In order for the "mosaic theory" to hold water, the government would have to patch the holes it has been drilling in its own boat. They haven't done so.

The government apparently expects this Court to turn a blind eye to their opportunistic release of CCTV footage when advantageous to their cases. Indeed, the fact that the government has already voluntarily and passively released CCTV footage undercuts their own argument of the "mosaic theory" need for protection. The "mosaic theory" apparently has an unspoken exception for the FBI website, congressional hearings, Julian Khater, George Tanios, Emanuel Jackson, and Bruno Cua[1] — but not for John Anderson. Why not? Because the "mosaic theory" argument is nothing more than the government's attempt to divert the Court's attention from their sliding scale of necessity to protect CCTV footage.

More egregiously, the government's claim of necessity for the protection of CCTV video differs from case to case. Consider, for example, the Capitol case of Emanuel Jackson, currently pending before this Court. The government took "no position" on releasing the CCTV footage to the media in that case. See Case 1:21-mj-00115, Document 20. Why did the government not take a position? Because this CCTV video appeared to corroborate the government's claims against Mr. Jackson.



From *United States v. Emanuel Jackson*



*From United States v. George Tanios*

---

[1] Video appears to show Capitol riot suspect Bruno Cua punching, slamming police into door, WUSA9 (July 6, 2021), https://www.youtube.com/watch?v=TQcVueZPHrk&t=1s.



The same holds true for the government's decision to take a knee on the release of CCTV footage to the media in the George Tanios case. This Court chose to release the CCTV video to the media in both of these cases.[2]

As for the public release of CCTV footage in the congressional trial of Donald Trump — a poor excuse from the government: "Capitol Police had no control over the fact that Capitol surveillance video was used 'in President Trump's second Impeachment Trial.'" Surely, the government realizes that the intent of the release is irrelevant to their underlying argument that the release of the CCTV footage will expos previously unseen areas of the Capitol. Whether Capitol Police had "control" of the release or not is entirely inconsequential to this argument — what matters is that the video was released by the government in relation to a January 6 prosecution and the CCTV video is now broadly available to the public.

The most logical explanation for resolving the government's contradictory positions is the government is using the "mosaic theory" and "security concerns" fear-mongering as a strategy to conceal evidence from the public that is detrimental to their case. The government's choice to release footage in some cases, and their strategic opposition to the release of the same type of footage in another case, without any explanation from the government and after multiple opportunities to do so — reeks of gamesmanship. There is only one plausible explanation for these inconsistent positions: the government is trying to hide favorable defense evidence from

---

[2] News4 Obtains Video of Alleged Baseball Bat Attack at US Capitol Insurrection, NBC4 Washington (March 18, 2021), https://www.nbcwashington.com/news/local/news4-obtains-video-of-alleged-baseball-bat-attack-at-us-capitol-insurrection/2611519.

the public in order to continue controlling the narrative about what happened on January 6 and the stability of their cases against each of the 535+ arrestees.[3]

The video that the government is seeking to hide in this case shows Mr. Anderson being sprayed by a chemical substance before he approaches the police line to seek medical assistance. This video directly contradicts the government's theory that the defendant required medical aid only after being disorderly and being sprayed by Capitol Police. The video proves the government's theory of the case doesn't hold water — the video is entirely exculpatory. This video also puts the government's other videos of Mr. Anderson into context, explaining why he makes his way to the front of the police line, which is to seek medical assistance from law enforcement. The video in question also happens to show the moment that a police shield is passed by the crowd over Mr. Anderson's head, after he was sprayed and before he begins coughing, and it shows Mr. Anderson pushing the shield past his head as it's being passed by the crowd (this is the moment of the alleged "theft" of government property). Recall, the government is accusing Mr. Anderson of theft, assault/impediment, and civil disorder, in addition to four misdemeanors offenses related to unlawful entry into the Capitol. This CCTV video, in context with all the others that are not subject to any restrictions, contradicts the government's accusations and their indictment. The reason why the government is seeking to keep this video away from the public is that it exposes the weakness of their case against Mr. Anderson, and it contradicts the public narrative that the government has put forward about Mr. Anderson. Put simply, unlike the Khater, Tanios, Jackson, and Cua videos, which bolster the government's case,

---

[3] Prosecutors Have Had Six Months To Go After The Capitol Mob. Here's What They Have So Far., BuzzFeed News (July 6, 2021), https://www.buzzfeednews.com/article/zoetillman/capitol-riot-jan-6-investigation-arrests-six-months.

the Anderson CCTV video refutes the government's case — *that is why* the government released the CCTV footage in those cases but is fighting tooth and nail to conceal evidence in Mr. Anderson's case.

III. The 30-Second CCTV Video Does Not Implicate Any of the Government's Security Concerns

The 30-second CCTV video in question shows the *outside* of the Capitol, not the interior. This area is accessible to the public, period. The video is also not long enough to reveal the security camera capabilities that the government argues should remain confidential. The video is also not long enough to reveal the full range of motion capabilities of that camera. The defense is not seeking to change the designation of all CCTV videos marked as "Highly Sensitive"; the defense is not even seeking to release the full CCTV video of the defendant in this tunnel that has been provided to the defense. The defense only seeks to release a limited and precise portion of the clip that reveals a 30-second period of time, a particular moment that exculpates the defendant. The necessity for this release was created by the government when they decided to publicly accuse the defendant of egregious felonious conduct *despite* being in possession of this evidence contradicting that narrative.

The government's broad security concerns simply don't hold water in this instance when only a narrow piece of evidence is being sought for release. After all, if the government's own arguments are followed to their logical extremes, none of the CCTV videos that have been released in the related Capitol cases should have ever been released, and the government's own lawyers should be sanctioned for failing to object to the release.

IV. The Government's Opposition Obstructs Defendant's Constitutional Rights

The 30-second CCTV sought by the defense for release from "Highly Sensitive" designation is exculpatory. The video depicts not just reasonable doubt — it embodies complete exoneration. The defendant is entitled to this discovery whether the government likes it or not. See *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982). And the defendant is entitled to use this discovery to prove his innocence. This video is necessary for the defense theory of the case and implicates the due process clause of the Fifth Amendment.

The United States Constitution guarantees all criminal defendants "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The government's unfounded concerns for security do not supersede a defendant's constitutional right to present a complete defense. And, a complete defense does not begin and end in the courtroom. See *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1043 (1991) ("A defense attorney may pursue lawful strategies to obtain dismissal of an indictment or reduction of charges, including an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried"). See also *Stinnett v. Regional Transp. Dist.*, 477 F. Supp. 3d 1187 (D. Colo. 2020) ("There is a strong public interest in having a robust debate … a party who claims to have been wronged by unconstitutional or otherwise tortious conduct by a government entity is free to try to obtain vindication by any number of means, including by using his or her First Amendment rights to educate the public, to try to bring public pressure on the defendants to effectuate a settlement, or even to educate the defendants to ensure that the wrongful conduct never happens to anyone else").

The government has already taken their case against John Anderson to the public and the media. The government has made a web page on the official DOJ website dedicated to their case against John Anderson.[4] And, it appears the government has provided still images from John Anderson's case to the media.[5] An attorney for the government has even done a television interview on the subject of Capitol cases.[6]  The defense, on the other hand, has stuck to good-old-fashioned pleadings and abiding by Rule 57.7(b)(1) of the Local Rules of the U.S. District Court for the District of Columbia.

The government's position in their briefs is that they should be in control of what to release to the media and what not to, including choosing to release CCTV footage when doing so benefits their case; the defendant, on the other hand, should remain restrained by the government so that the government can retain unilateral control over the public narrative in each Capitol prosecution.

The defendant should be in control of his defense, not the government. As expressed in previous pleadings, the defendant must be free to strategize and utilize resources outside of his attorney's law office, resources not subject to the protective order. While the defense is not currently interested in bringing our case directly to the public or to the media, the defense also should not be restrained by the government from being able to do so. The defense has a constitutional right, even duty, to utilize exculpatory evidence in the best interests of the defendant.

---

[4] ANDERSON, John Steven, U.S. DEPARTMENT OF JUSTICE (Updated June 14, 2021), https://www.justice.gov/usao-dc/defendants/anderson-john-steven.

[5] St. Augustine man accused of unlawfully entering Capitol faces judge, News4JAX (Feb 26, 2021), https://www.youtube.com/watch?v=LFVyXaCDkTw.

[6] Inside the prosecution of the Capitol rioters, CBS News (March 22, 2021), https://www.cbsnews.com/news/capitol-riot-investigation-sedition-charges-60-minutes-2021-03-21.

The defendant has the Constitution on his side, Supreme Court precedent, and *ends of justice*. The government, on the other hand, has an invalid argument, inconvenient contradictory facts, and fear-mongering. The government, coincidentally, also carries the burden of proof on the issue of protective order designation. The balance of the scales here is clear —the defendant must prevail.

**CONCLUSION**

In their pursuit of opposition to the defendant's request, the government is exposed as levying unsupported charges on an elderly man and then attempting to conceal the evidence that proves his innocence. The video sought for release is necessary for the defense to build responses and arguments, utilizing resources outside of the law office, resources not subject to the protective order. The government's claims of security concerns requiring protection of these videos are undercut by their own opportunistic release of CCTV videos in other cases. The government's broad security concerns simply don't hold water in this situation — when only a limited piece of evidence is being sought for release, when it would follow a pattern of release in other Capitol cases, and when the interests of justice support release. The defense and Press Coalition's motions should both be granted.

Respectfully submitted,
By Counsel:

/s/
_____

Marina Medvin, Esq.
*Counsel for John Anderson*

MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

### CERTIFICATE OF SERVICE FOR CM/ECF

I hereby certify that on July 8, 2021, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/
_____
Marina Medvin, Esq.