```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
_____

United States of America,      ) Criminal Action
                               ) No. 1:21-cr-00215-RC-1
              Plaintiff,       )
                               ) Status Conference (via Zoom)
vs.                            )
                               )
John Steven Anderson,          ) Washington, D.C.
                               ) July 28, 2021
              Defendant.       ) Time:  9:30 a.m.
_____

         Transcript of Status Conference (via Zoom)
                        Held Before
         The Honorable Rudolph Contreras (via Zoom)
                United States District Judge
_____

                      A P P E A R A N C E S

For the Plaintiff:        Robert C. Juman
(via Zoom)                U.S. ATTORNEY'S OFFICE
                          500 East Broward Boulevard
                          Ft. Lauderdale, Florida 33132

For the Defendant:        Marina Medvin
(via Zoom)                MEDVIN LAW PLC
                          916 Prince Street, Suite 109
                          Alexandria, Virginia 22314
_____

Stenographic Official Court Reporter:
(via Zoom)                Nancy J. Meyer
                          Registered Diplomate Reporter
                          Certified Realtime Reporter
                          United States Courthouse, Room 6509
                          333 Constitution Avenue, Northwest
                          Washington, D.C. 20001
                          202-354-3118
```

1       P R O C E E D I N G S

2              (REPORTER'S NOTE:  This hearing was held during the
COVID-19 pandemic restrictions and is subject to the
3       limitations of technology associated with the use of
technology, including but not limited to telephone and video
4       signal interference, static, signal interruptions, and other
restrictions and limitations associated with remote court
5       reporting via telephone, speakerphone, and/or
videoconferencing.)
6

7              THE COURTROOM DEPUTY:  This is Criminal Action

8       21-215, United States of America v. John Steven Anderson.

9              For the United States, I have Mr. Robert Juman.  For

10      Mr. Anderson, I have Ms. Marina Medvin.  Our court reporter

11      today is Ms. Nancy Meyer.  All parties are present.

12             THE COURT:  Good morning, everybody.

13             MS. MEDVIN:  Good morning, Judge.

14             MR. JUMAN:  Good morning.

15             THE DEFENDANT:  Good morning.

16             THE COURT:  All right.  Let's start.  Ms. Medvin,

17      does your client under the CARES Act agree to appear this

18      morning by video rather than waiting to appear in person?

19             MS. MEDVIN:  He does, Judge.

20             THE COURT:  Okay.  Terrific.  So we'll proceed by

21      video then under the CARES Act due to the pandemic and the

22      safety risks of holding court in person.

23             All right.  Where do things stand?  Let's put aside the

24      issue of the video for the moment.  Where do things stand as

25      far as moving the case along?

1    MR. JUMAN: Your Honor, the government has provided
2    fundamentally all the relevant discovery. Additional discovery
3    does continue to trickle in as defendants are arrested.
4    Sometimes we get new video. As that has happened, I've been
5    providing it to Ms. Medvin.
6    As noted in the status memo that I filed with the Court
7    earlier in the week, there obviously continues to be an ongoing
8    effort by the government to process the additional discovery
9    that's out there, the video and evidence, to make sure that
10   we're complying with our *Brady* obligations. That effort
11   continues.
12   I just this morning received approval to extend a plea
13   offer, which I have conveyed to Ms. Medvin literally minutes
14   before we got on here. So understandably she may not have had
15   a chance to look at it.
16   But I discussed this with Ms. Medvin, and the government
17   is going to ask the Court to reset this matter for 60 days so
18   that the efforts that are outlined in our status memo can
19   continue and that we can engage in plea discussions.
20   THE COURT: Okay. Ms. Medvin?
21   MS. MEDVIN: Yes, Judge. I was not aware there's a
22   plea offer. I'm checking my email right now. I don't have
23   anything. So this is brand-new to me.
24   MR. JUMAN: It was just minutes ago.
25   MS. MEDVIN: We agree with the 60 days obviously,

1  Judge.  We continue discussing with the government as far as a
2  resolution in an attempt to avoid trial.  As our memorandum on
3  the issue of video release advised, that was the initial goal
4  as well.  We're trying to advise the government they made a
5  mistake in this case.
6          As far as waiving the 60 days in this -- under the
7  Speedy Trial Act, we don't have an objection to that either.
8             THE COURT:  Okay.  So let's do that first.  What's
9  60 days, Tanya?
10            THE COURTROOM DEPUTY:  Judge, 60 days would bring us
11  to September 28th, and we have a trial scheduled.  We can do it
12  the Friday, September 24, if everyone is available.
13            MR. JUMAN:  That's fine for the government.
14            MS. MEDVIN:  That works for the defense.
15            THE COURTROOM DEPUTY:  10:00 a.m.?
16            MR. JUMAN:  Very good.
17            THE COURT:  Ms. Medvin, does 10:00 a.m. work for you?
18            MS. MEDVIN:  10:00 a.m. works, Judge, yes.
19            THE COURT:  Okay.  Great.
20         The parties have moved for a continuance pursuant to the
21  Speedy Trial Act.  The Court finds that the ends of justice
22  served by a continuance outweigh the best interests of the
23  public and the defendant in a speedy trial.  The Court finds
24  that a failure to grant the request for a continuance would
25  deny counsel for the defendant and the attorney for the

1     government the reasonable time necessary for effective

2     preparation, including the reasonable time for the government

3     to continue to provide discovery as it comes in and is made

4     available.  By all accounts, it's a voluminous amount of

5     discovery.

6          And I -- I gather from other conversations that there's

7     some hitches with Deloitte setting up the database for defense

8     counsel, but the parties -- the government represents that it

9     has provided the essential discovery pertaining to this one

10    defendant in the short term, at least enough for the parties to

11    discuss the plea offer that was transmitted just moments before

12    this hearing so that the parties can discuss the possibility of

13    resolving the case before trial.

14         The Court, therefore, finds that the ends of justice

15    served by granting the continuance outweigh the public's and

16    the defendant's interest in a speedy trial and that time under

17    the act as tolled has been excluded from today's date up to and

18    including the next status hearing that is set for

19    September 24th at 10:00 a.m.

20         All right.  So let's deal with this issue with the

21    video.  So, Mr. Juman, I understand, you know, the government's

22    arguments, and I've read Mr. DiBiase's declaration, which it is

23    very, very generalized.  It sounds like they don't just like

24    giving up any of this video.  And I read the intervenors'

25    papers or the movants' papers.  And is it accurate that in the

1    that other case, the Morss case, the government did not object
2    to providing a video that's in the same spot four minutes
3    later; is that right?
4            MR. JUMAN:  Your Honor, that video which had been
5    used in the proceeding, yes, it -- approximately the same
6    location.
7            THE COURT:  No, no.  I understand the distinction
8    between whether it's used or not in a proceeding with respect
9    to the intervenors, but with respect to Ms. Medvin, I don't
10   think that makes a difference.  So the question here is just
11   what makes this snippet of video highly sensitive when
12   apparently the Morss one was not?
13           MR. JUMAN:  Your Honor, I -- actually, I would differ
14   with that conclusion.  It was highly sensitive in both cases.
15   It's just in the other case, in the Morss case, because it was
16   used, the government then took the steps to get permission from
17   the Capitol police to provide it.
18           In this case, because it hasn't been used, there's been
19   no occasion to do that.  And if we were to provide all of the
20   video simply because other video had been produced, obviously
21   there would be no limitation on that principle and we wouldn't
22   have -- we wouldn't be able to protect the Capitol police's
23   security interests as they've expressed with us.
24           THE COURT:  Okay.  Well, the way I read the
25   declaration, it's a very generalized security interest.  So I'm

1   trying to understand what the security interest in this
2   particular video is when stills have been provided and are able
3   to be used freely and this video apparently shows the same spot
4   four minutes later, which I'm just guessing there's no material
5   difference in the security aspects of it.
6       So how do I determine that this is highly sensitive and
7   can specifically pose security problems for the -- you know,
8   the Capitol folks when that Morss -- beyond what the Morss --
9   release of the Morss video does?
10          MR. JUMAN:  Your Honor, I -- I don't think I can add
11  to what the Capitol police have provided.  I would like,
12  however, to just raise for the Court the issue that -- we think
13  that the lens this should be reviewed at is:  Does the Court
14  need to address the designation at all?  Does the terms of the
15  protective order permit Ms. Medvin to provide this video freely
16  to anyone who's helping her with the defense?  And that's
17  already baked into there.  That was already part of the order
18  that the Court issued.
19          So, yes, it's certainly true that, you know, other video
20  may have been provided from four minutes earlier, but the
21  principle that really we're trying to protect here is that we
22  do have a protective order in place, and if that protective
23  order allows Ms. Medvin to provide the materials to the person
24  she wants to, there really is no reason to address the
25  designation unless that's not what really is at issue.  In

1    fact, the -- the attempt to provide the video to
2    Dr. Zervos (phonetic), what's really going on is an attempt to
3    undermine the principles of the protective order.
4         So I take absolutely the Court's concern.  I cannot
5    formulate any greater sensitivity that exists for this Court
6    and this video than for the four minutes earlier, but I do
7    think it's important to note there's nothing in the protective
8    order that prevents Ms. Medvin from providing this to the
9    doctors that she wants to provide it to --
10              THE COURT:  Sure.
11              MR. JUMAN:  -- without altering the designation.
12              THE COURT:  Sure.  But the protective order also
13   provides for exactly what she's done here, which is to ask that
14   the -- that the designation be removed from a particular piece
15   of evidence.  And so that's what I have before me, and I'm
16   having a hard time determining why I shouldn't grant that.
17        Let me ask you this question, as to the extent you know:
18   The hearings that are going on before Congress now, I know
19   they're showing videos.  Do you know if any of those videos are
20   CCTV videos?
21              MR. JUMAN:  Your Honor, I watched the openings
22   yesterday.  I cannot say I watched everything.  The only video
23   I saw was body-worn camera, which we're not designating as
24   highly sensitive.
25        And, again, I don't want to belabor the point.  I'll

1  just note that if the Court were to order that -- said
2  absolutely under my interpretation of the protective order
3  defense is free to provide this to the doctors, then the
4  defense provides them to the doctors.  If the Court by contrast
5  says I've decided to de-designate this video, then the defense
6  can provide the video to the press, can provide it to anybody.
7  It's no longer protected by any means, and I don't see how
8  there's any reason to do that in this case given that the
9  defense is free to provide it to the doctors without such an
10 alteration of the designation.
11          THE COURT:  But with respect to videos that are not
12 protected, highly sensitive, like the body-worn camera footage,
13 Ms. Medvin can provide that to whoever she wishes; correct?
14          MR. JUMAN:  Absolutely.
15          THE COURT:  Okay.  So I'm still not having an easy
16 time understanding why I shouldn't remove the designation for
17 this video, which I think is -- I'm going to -- I'll think
18 about it a little bit longer, but I think that's where I'm
19 heading.
20          MR. JUMAN:  Understood, Your Honor.  I wish I could
21 provide you more, but the affidavit from the Capitol police is
22 all I really have to go by.
23          THE COURT:  No, I understand. And what's somewhat,
24 you know, difficult is -- you know, I probably when I was an
25 advocate argued myself that, you know, providing evidence of

1    this nature allows people to determine where the cameras are
2    and where the blind spots are and the like.  But once you
3    provide the stills, a lot of that happens already.
4            So, you know, there's no way -- I haven't heard you
5    articulate and I can't conceive of what problems this
6    particular snippet provides that isn't provided by the --
7    similarly by the Morss snippet to the extent --
8            MR. JUMAN:  Yeah, understood, Your Honor.  And I
9    think, again, if I can reflect the guidance I've been given, in
10   any particular case, any slice of time, it's going to be very
11   difficult to convey that kind of concern.  I think the Capitol
12   police's concern is in the aggregate if this goes too far, then
13   it becomes possible for someone to reverse engineer it, a map
14   of the cameras.  And so because of concerns about a slippery
15   slope, there's a desire to protect each clip if there's not a
16   good reason under the protective order to change the
17   designation.
18           THE COURT:  No.  And I understand that argument, and
19   it might have been a better argument before the Morss clip was
20   released, but once the Morss clip is released, then there's --
21   the already thin reed snaps.
22           MR. JUMAN:  Understand, Your Honor.
23           THE COURT:  Okay. All right.  Anything else we need
24   to resolve this morning?
25           MR. JUMAN:  Nothing from the government, Your Honor.

```
1                THE COURT:  Ms. Medvin?
2                MS. MEDVIN:  No, Judge.  Thank you.
3                THE COURT:  Okay.  Thank you.
4           Thank you, Mr. Anderson.
5                THE DEFENDANT:  Yes, sir.  Thank you, Judge.
6                (The proceedings concluded at 9:40 a.m.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Nancy J. Meyer, Registered Diplomate Reporter, Certified Realtime Reporter, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 3rd day of August, 2021.

/s/ Nancy J. Meyer
Nancy J. Meyer
Official Court Reporter
Registered Diplomate Reporter
Certified Realtime Reporter
333 Constitution Avenue Northwest, Room 6509
Washington, D.C. 20001